## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## GALVESTON DIVISION

| | | |
|---|---|---|
| ANNIE RAY | § | |
| | § | |
| VS. | § | NO. |
| | § | |
| COLUMBIA BRAZORIA INDEPENDENT | § | |
| SCHOOL DISTRICT | § | ***TRIAL BY JURY DEMAND*** |

## PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT**:

  **COMES NOW, ANNIE RAY**, Plaintiff, in the above entitled and numbered cause and

for cause of action would show the following:

1.  Plaintiff is an individual residing in Brazoria County, Texas.  Plaintiff's address is 1118 Woodbine,  West Columbia, Texas 77486.

2.  Defendant, Columbia Brazoria Independent School District is a public school district organized and operating under the laws of the State of Texas and may be served by serving its superintendent, Steven Galloway at 520 S. 16th Street, West Columbia, Texas 77486.

3.  The amount in controversy exceeds the jurisdictional amount of $75,000.00

4.  The court has jurisdiction of this cause pursuant to Title VI and Title VII of the Civil Rights Act of 1964 at  42 of the United States Code, section 2000e et seq and 102 of the Civil Rights Act which provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII; the Americans with Disabilities Act of 1990, as Amended at 42 USC chpt 126 §12101 et seq; the Age Discrimination in Employment Act (ADEA) of 1967, as amended at 29 USC 621, 623 and 626 et seq and the Older Worker's Benefit Protection Act Pub. L 101-433).

5.  The causes of action pled herein are likewise based on Title VI and Title VII of the Civil Rights Act of 1964 at  42 of the United States Code, section 2000e et seq

and 102 of the Civil Rights Act which provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII; the Americans with Disabilities Act of 1990, as Amended ; the Age Discrimination in Employment Act (ADEA) of 1967, as amended at 29 USC 621, 623 and 626 et seq and the Older Worker's Benefit Protection Act Pub. L 101-433).

5.     The complainant  filed a complaint with the Equal Employment Opportunity Commission, hereinafter referred to as EEOC.  A revised charge was filed on or about November 29, 2021  The Right to Sue Letter was issued on or about October 19, 2022.  Same  is attached herein as Exhibit A, attached and incorporated by reference, the same as if fully copied and set forth herein.

6.     Plaintiff was employed by CBISD from about June 2000  until her contract nonrenewal in May, 2021.

7.     During the period of time from March 2020 to May 2020, Columbia Brazoria Independent School District, hereinafter referred to as CBISD engaged in virtual teaching, as the campus was closed due to Covid-19.   CBISD teachers worked from home, providing virtual instruction and were not allowed to return after Spring Break.

At the time, little was known about transmission and susceptibility to the disease, but it was clear and unequivocal that numerous people were dying from Covid 19.[1]

8.     Prior to school opening for the Fall semester, 2020, several students participating in extracurricular activities (including football and the Dancing Dolls) had caught and passed around Covid-19 at said  practices.

9.     Coupled with knowledge of the information regarding the spread amongst the athletes and others at her high school, coupled with the ease of transmission, Plaintiff discussed being in an area with minimal student contact, with her immediate supervisor, the school's principal, at the time of "teacher-in- service" immediately  prior to the beginning of school.

10.    Plaintiff's supervisor  rejected the accommodation of minimal contact or working in a confined space. . Upon said rejection, Plaintiff sought the accommodation that she be allowed to teach virtually.  Said request was also denied.

---

[1] CDC (Center for Disease Control ) Statistics in Texas show that since the time of outbreak to the present, Texas has reported 8,189, 256 cases, with the death toll being 93,003. For the United States as a whole, the total cases were 101,518,229, with a death rate of 1,095,149.

.

11.    Plaintiff had a known history of medical maladies which made her more highly
susceptible to catching and dying from Covid-19.  Specifically, Plaintiff suffered
from diabetes, high blood pressure, Proliferative diabetic retinopathy,  macular
degeneration and obesity.  Consequently, according to the CDC guidelines, she
had medical conditions which put her at greater risk for catching and dying from
Covid-19.   The school district was aware that she had been receiving treatment
and injections to prevent going blind.[2]

12.    In addition to the foregoing medical concerns, Plaintiff developed anxiety and
depression, which required ongoing treatment.  Plaintiff's anxiety disorder began
when faced with having to return to school and  being around a population which
would greatly increase the possibility of transmission which could impact upon
her health.

13.    Plaintiff's supervisor advised her that he could not afford her any accommodation
due to her health concerns, as same would be discrimination toward the other
teachers.

14.    As a result of said refusal to provide her an accommodation, Plaintiff's anxiety
increased..  Additionally, she became depressed.

15.    As a result of the District's refusal to provide her an accommodation by placing
her in an environment with less student contact or in the alternative to allow her to
teach virtually, Plaintiff sought long term disability on or about August 13, 2020.
(Said request is attached as Exhibit B, and incorporated by reference, the same as
if fully copied and set forth herein)..

16.    On or about August 14, 2020, Plaintiff  tendered a request  to CBISD Human
Resources Director for long term disability.  The letter was given back to Plaintiff
by the benefits coordinator, stating that all she needed was the completion of a
form, along with medical forms to be completed by Plaintiff's physician(s).

17.    Plaintiff obtained and tendered medical documentation to support her request for
long term disability to the benefits coordinator, who then tendered the documents
to the insurance company handling CBISD's long term disability.

---

    [2]  Consequently, Plaintiff had a known history of disability and was regarded as disabled,
and the district had  knowledge thereof.

18.     At some point ( in or around October, 2020 ), the insurance carrier, the Long
        Term Disability Insurance Group (American Fidelity Assurance Company)
        notified the Plaintiff that additional documentation was required, including
        information from her primary care physician, her eye specialist, a psychologist,
        and a psychiatrist.   Said information was provided. .

19.     In or around November, 2020, the insurance carrier notified her that her claim had
        been approved.

20.     No other documentation was requested by American Fidelity Assurance Group
        nor CBISD.  Plaintiff, however, went to the administration building monthly to
        pay her insurance premiums to ensure that her policies (health, life, dental, and
        disability insurance) did not lapse during her disability leave.

21.     On or around March 22, 2021, the principal at the high school (who was also
        Plaintiff's immediate supervisor)  notified the Plaintiff that "the people across the
        street" were not going to renew her contract.  "Across the street" is a reference to
        the administration building which is directly across the street from the high school
        where Plaintiff taught.  More specifically, same was a euphemism for the
        Superintendent.

22.     He also asked her to resign in lieu of nonrenewal.  Plaintiff refused.

23.     Plaintiff then received a notice from the Human Resources Director indicating
        that her contract would not be renewed.   In response thereto, Plaintiff sent a letter
        to Ms. Matthews asking the reason that her contract was not being renewed. .

24.     Ms. Matthews sent a response which failed to cite the specific reason, but set forth
        34 bases for nonrenewal.

25.     Plaintiff sought clarification regarding which reason was the applicable one.
        ( Memo from Plaintiff to Matthews dated March 30, 2021)

26.     After excessive absenteeism was set forth as the basis, Plaintiff filed a grievance,
        as she failed to understand how that could be the basis since she was on approved
        medical leave.

27.     Plaintiff found same to be discriminatory conduct on the basis of her disability.

28.     Plaintiff attended the grievance hearing with concern and trepidation, as she was
        not represented.   Claimant was surprised that she was being terminated for
        absenteeism because she believed the district had approved her disability leave.

-4-

However, at the hearing, the district claimed that it had no knowledge that she was on long term disability leave.   Among other things, the district feigned ignorance of her absence, contending that it had no knowledge as to why claimant was off from work.

29.    During the hearing, the superintendent would not allow her to speak on the issue of her disability.  When one board member attempted to develop that line of inquiry further, he cut her off, stating that they were not going to talk about that, as the Plaintiff had failed to provide the reason for being absent.

30.    The superintendent offered a "secretly recorded" discussion between Plaintiff and the benefits coordinator which he believed proved that she did not submit documentation to him regarding her leave.  No such request was ever made of her. Moreover, Plaintiff did not know the Superintendent had filed a denial until the night of the hearing.

31.    Plaintiff contends that to the contrary, the recording establishes that the district knew she was out and why.

32.    Plaintiff further contends that Defendant violated its own policy.  CBISD procedure requires the District to notify an employee of excessive absenteeism. They did not.  (See Exhibit C, attached and incorporated by reference, the same as if fully copied and set forth herein.

33.     On May 19, 2021, after the school board hearing, the Board of Trustees of the CBISD upheld the recommendation for renewal of Claimant's contract,  stating that it had already hired someone to replace her.  The District did indicate that she would be eligible for reassignment to another position.  The person hired to replace her was a younger white male.

**DISABILITY**

34.    Plaintiff would show that she was discriminated against on the basis of disability in violation of the **Americans with Disabilities Act** of 1990, as Amended at 42 U.S.C. 12101 et seq ; 42 U.S.C. §12112

a.    Plaintiff was a person with a disability (macular degeneration,  diabetes, hypertension, Proliferative diabetic Retinopathy,  anxiety and depression which substantially limited one or more major life activities.  In addition to the physical aspects of her disabilities which affected the major life activity of seeing, reading, concentrating, communicating, and working,

her conditions affected major bodily functions .

b. Prior to diagnosis of anxiety and major depressive disorder, she was <u>regarded as</u> having a condition which affected a major life activity, as her visual issues and diabetes were commonly known among supervisors and staff.

Her disabilities became worse, as anxiety and depression were added to the list of medical maladies she suffered. Said psychiatrist determined that the anxiety of teaching in the school system, and being subjected to numerous students, given the uncertainty of its effects, was debilitating- especially since a number of students and teachers contracted CoVid 19 at the outset of the school year.

c. Consequently, Plaintiff has a record of such impairments.

d. Additionally, Plaintiff requested an accommodation, however, she was denied same in contravention of *42 U.S.C. 12111(8); 29 C.F.R. 1630.2(m); 42 U.S.C. 12111(9); 29 C.F.R. 1630.2(o); 34 C.F.R. 104.12(b)* As heretofore set out, the District failed to allow her to teach in a smaller setting, a confined area or virtually.

35. Plaintiff contends further that the District did not request additional information from her regarding her mental health issues;

36. Claimant contends that she has been discriminated against on the basis of disability in that her absence was due to a disabling condition.

37. The District did not send Plaintiff notification that information was lacking from her medical file nor did they advise her that any additional information was needed.   Plaintiff believed that all information that the district needed was being share or provided by the insurance carrier.   Plaintiff contends that the District violated any prohibitions set in place by the ADA or asking for information to which it was not entitled.  Plaintiff further contends that Defendant failed to make a showing that it was entitled to violate HIPPA or that the information was needed to determine the nature of her disabling condition

38. The District did not comply with its own policies and procedures regarding notification of excessive absenteeism.

39. The District did not provide her with FMLA information, nor information on her eligibility therefore, even though Defendant was aware that said information was necessary during her period of taking leave.  No information was provided to Plaintiff regarding how to obtain FMLA during the pendency of her disability or

her disability determination.  Plaintiff mistook a document for being an FMLA form which it was not.  Nor was any information provided to her verbally regarding FMLA benefits from the time she ceased to teach at the beginning of the school year until the time of her grievance hearing.

40.  Plaintiff was further discriminated on the basis of disability by the District's failure to provide the accommodation that she requested or any reasonable alternative thereto. In response to the Covid-19 outbreak, the District had already employed virtual learning the previous school year.  However, the District failed to make that accommodation for the claimant when requested, and when deemed medically necessary.

41.  One or more similarly situated males who alleged a disability were reassigned to positions which led to less student contact, however, she was not afforded that opportunity.  Moreover, these males were given positions formerly held by the Plaintiff- teaching or supervising In School suspension, DAEP (Disciplinary Alternative Education Program, and Homebound (teachers go to the home of a student who is unable to attend school usually due to a medical reason, recuperation, rehabilitation, etc.

42.  Two males were offered alternative positions to keep them from being subjected to direct student contact.  Of those males, one worked in a position in which Plaintiff had previously served.  The other worked in a position which was specifically created for him. Job restructuring was not afforded to the Plaintiff, however in contravention of *42 U.S.C. 12111(9); 29 C.F.R. 1630.2(o); 34 C.F.R. 104.12(b)*.

43.  With respect to two other males who were on the coaching staff, they manifested no disabilities nor need for accommodations, but yet were placed in positions of ISS and DAEP, which were both positions previously held by Plaintiff.

44.  Two of the foregoing referenced males were not disabled.

45.  Three of the males were white males.

46.  Three were younger than the Plaintiff.

47.  Complainant believes further that she was discriminated against because these similarly situated white men were afforded accommodations, when an accommodation was not needed, with same being accomplished by either giving them  smaller class rooms or job assignments which required little or no student contact. Moreover, other schools within the Columbia Brazoria School District

were offering virtual learning.

**RACE, SEX, and AGE**

48.     The preceding paragraph also sets forth a basis for race and sex discrimination, as
        well as discrimination on the basis of disability. Plaintiff contends that she was
        treated less favorably than similarly situated white males on the basis of her sex
        (female), her race (Black) and her age.

49.     Claimant further contends that she was discriminated against on the basis of age.
        At the time of the notice of termination, Claimant was 63 years old.

        In addition to the foregoing, Plaintiff would show that the with the exception of
        one male, as outlined in ¶¶_____ , the white were reassigned from their teaching
        positions, and placed in positions with little or no student contact.


        Plaintiff would further show that with the exception of one person, who was
        provided an accommodation or a job reassignment (who had no disabling
        condition, she was older than the other three men who were provided alternative
        teaching opportunities. Several of those men provided little or no student
        interaction, as the ISS and DAEP were rarely being utilized during the pandemic.


50.     During the hearing, Claimant learned that a conversation with the Benefits & TRS
        (Teacher's Retirement Coordinator) was recorded during a visit to determine
        eligibility and pay benefits. The person in question was a Black female. Plaintiff
        contends that the District "used" a Black female to "undermine" Plaintiff into
        prevent her from raising a race based discrimination claim. However, race was
        nevertheless a factor.


51.     Plaintiff therefore contends that she was treated differently on the basis of race,
        sex and age. All of these men referred to herein were white males, who was
        younger than claimant. One Black male, also younger, had a severely debilitating
        condition, and a position which never existed prior to, had a position created for
        him in order to afford him the opportunity to remain in the district or on staff.


**RETALIATION**

-8-

52.     Finally, Claimant believes that she was fired in retaliation for complaining about the District's failure and refusal to provide the accommodations she requested and for her seeking medical/ disability leave.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff contends that her

termination/nonrenewal was wrongful and that she is therefore entitled to:

1.     As a result of the wrongful termination by Defendant, Plaintiff has been unemployed for two years and has lost wages in the approximate amount of $112,000.00, and continues to lose wages at the rate of $56,000.00 per year or more, plus any increases she would have received for any pay raises that she would have received for each September since her termination.

2.     Pay from the date of the two years of back pay, with same being future pay until the date that she would have retired; Given costs of living increases, claimant contends that that amount is approximately $168,000.00.

3.     Attorney's fees from all matters incident to consultations, assistance with letters, review of documents, preparation for any hearings, plus all future costs associated with litigation in the event that this matter is not resolved prior to litigation. At this time, said amount is undetermined.

4.     Loss of insurance benefits, such as life insurance with an approximate value of $10,000.00.

5.     Plaintiff has further suffered humiliation and embarrassment due to said job loss after having been employed with CBISD for numerous years. Plaintiff has suffered past pain and suffering in an amount no less than $300,000.00.

6.     Plaintiff is expected to incur pain and suffering in the future and estimates same to be valued at an amount of $30,000.00.

7.     Plaintiff has suffered the loss of medical and dental benefits, as result of said termination and has suffered medically as a result thereof in the approximate amount of $10,000.00.

8.     It was necessary to obtain the services of legal counsel. Therefore, Plaintiff seeks attorney's fees pursuant to the Attorney's Fee Award Act of 1988.

9.     That the Court grant Plaintiff a jury trial;

10.   That the Court grant Plaintiff all such other and further relief the Court deems just and proper.

Respectfully submitted,

/s/ V.L.Davis

Veronica L. Davis
Fed. No 29717
226 N. Mattson
West Columbia, Texas 77486
(979) 248-4583
vld57atal@yahoo.com

PLAINTIFF HEREBY MAKES A JURY DEMAND

# EXHIBIT A



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/19/2022

**To:** Annie Ray
  200 Damon Dr
  West Columbia, TX 77486
Charge No: 460-2022-01053

EEOC Representative and email:    Terangelo Davis
                  Federal Investigator
                  terangelo.davis@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 460-2022-01053.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
10/19/2022

Rayford O. Irvin
District Director

**Cc:**

| | | |
|---|---|---|
| Laura Jeffery | Chris Gilbert | Veronica L Davis |
| COLUMBIA-BRAZORIA ISD | Thompson & Horton LLP | ATTORNEY |
| 520 S 16TH ST | 3200 SOUTHWEST FWY STE 2000 | 226 N MATTSON |
| West Columbia, TX 77486 | Houston, TX 77027 | West Columbia, TX 77486 |

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 460-2022-01053 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor

Houston, TX 77002.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

Enclosure with EEOC Notice of Closure and Rights (01/22)

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment*

Enclosure with EEOC Notice of Closure and Rights (01/22)

*substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**EXHIBIT B**

Annie Laura Ray
1118 Woodbine
West Columbia, Texas 77486

Columbia Brazoria Independent School District
Human Resources
Attn: Brenda Matthews
520 S. 16th Street
West Columbia, Texas 77486

August 13, 2020

Re: Long Term Disability

Dear Ms. Matthews,

Please find attached my application for long term disability, accompanied by two physician statements.  I am seeking long term disability due to the following:

Anxiety Due to Potential CoVid-19 exposure in the school setting
Macular Degeneration; Proliferative Diabetic Retinopathy
Glaucoma
Diabetes
Hypertension

As a result of being high risk due to the foregoing conditions, my anxiety level regarding teaching during the pandemic is extremely great.  Additionally, since eye care and contact with my eye is greatly increased due to the eye disease and dry eye, I stand increased risk of touching a surface and then touching my eye- thereby increasing my chances of contracting CoVid 19.

Be advised that I am amenable to an accommodation which would allow me to teach remotely from home where I do not come in contact with the student body or other teachers.  Please consider this letter as an alternative request in that regard according to the Americans with Disabilities Act.

Thank you in advance for your consideration regarding my requests and the processing thereof.

Sincerely yours,

Annie Ray

cc:     Scott Moody

EXHIBIT C

*Columbia Brazoria ISD*                                               *Human Resources*

## CONSECUTIVE ABSENCE NOTIFICATION

*The immediate supervisor must notify Human Resources within two (2) days of any employee absence that will constitute five (5) or more days of consecutive absences from duty for a serious health condition for self or family for consideration of FMLA eligibility. See DEC (LOCAL) for details on family members and eligibility.*

**Campus/Department:** ☐ BE ☐ WCE ☐ WPE ☐ WBJH ☐ CHS ☐ ADMN ☐ CHNT ☐ CUST ☐ MAIN ☐ TECH ☐ TRAN

_____       _____    _____

           Employee Name                   Date of 1st Absence     Anticipated Return Date

**Serious Health Condition of:** ☐ Self ☐ Spouse ☐ Child ☐ Other (Explain) _____

**Reason for Absence:** ☐ Hospital Care ☐ Birth/Adoption ☐ Chronic Condition ☐ Multiple Treatments ☐ Long Term Dr.'s Care

☐ Other (Explain) _____

*I understand that I must contact Human Resources to determine eligibility for Family Medical Leave Act (FMLA) protection. I also must submit medical certification if absent more than five consecutive workdays because of personal illness or illness in the immediate family, or absent due to surgery.*

_____       _____

           Date                               Employee Signature

*Supervisor: Attach any relevant communications and forward to HR. If circumstances do not allow employee to sign, return to HR regardless.*

_____       _____

           Date                               Supervisor Signature

******************************************************************************************

### PROCESSED

**Processed:** _____       _____
                   Date                         Director, Human Resources

**Processed:** _____       _____
                   Date                 Administrative Assistant, Human Resources

**Processed:** _____       _____
                   Date                     Payroll & Benefits Specialist