United States District Court
Southern District of Texas
**ENTERED**
March 22, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ANNIE LAURA RAY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23-CV-00145** |
| | § | |
| **COLUMBIA BRAZORIA INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

This is an employment discrimination and retaliation case brought by Plaintiff Annie Ray, a former teacher, against Defendant Columbia Brazoria Independent School District ("the District") and Steven Galloway, the District's superintendent.[1] Before the Court are cross Motions for Summary Judgment. ECF Nos. 48, 58. For the reasons that follow, Defendants' Motion for Summary Judgment, ECF No. 48, is **GRANTED**, and Plaintiff's Motion for Summary Judgment, ECF No. 58, is **DENIED**.

## I.     BACKGROUND

Plaintiff Annie Ray is a former speech and communications teacher who was employed by the District for approximately 20 years before the District decided not to renew her contract. Plaintiff is a Black woman who was 63 years old at the time of her non-renewal.

---

[1] All other Defendants were previously dismissed. *See* Minute Entry 05/09/2023.

1

In March of 2020, all schools within the District were shut down due to the COVID-19 pandemic. All instruction occurred virtually for the remaining months of the 2019-2020 school year. The District reopened all schools for in-person instruction at the beginning of the 2020-2021 school year pursuant to Texas Education Agency policy. As part of the District's return to school plan, all teachers were required to return to campus to resume in-person instruction. Parents were permitted to decide whether their students would receive in-person or remote instruction.

Due to her age and health conditions, Plaintiff was concerned about returning to in-person instruction. Plaintiff has the following diagnoses: hypertension, diabetic polyneuropathy, edema of the lower extremities, hypomagnesemia, type 2 diabetes mellitus, morbid obesity, and chronic kidney disease. Due to her increased health risks if infected with COVID, the impending return to in-person instruction caused her to develop generalized anxiety and panic attacks.

On August 10, 2020, Plaintiff attended a teacher training on campus, which occurred prior to the beginning of the school year. There she discussed her health and concerns about COVID with her immediate supervisor, school principal Scott Moody. During that conversation, Plaintiff asked Moody whether she could continue teaching remotely or, alternatively, whether she could teach from somewhere in the school but be physically separated from the students (i.e., that there be no students in her classroom). Ray Dep. 23:14-23; Moody Dep. 27:1-28:2. Moody informed her that this would not be possible, as some portion of the student body would be attending classes in person and would need an instructor to be physically present in the classroom with them. Moody Dep. 26:4-27:11. During that conversation, Moody attempted to alleviate her concerns about COVID by describing how the school would provide hand sanitizer, masks, spray to wipe down desks, and gloves. *Id.*  27:9-14. Neither party raised the possibility of other accommodations. *Id.* 27:1-28:2; Ray Dep. 23:14-23, 27:19-28:3.

Throughout the summer of 2020, Plaintiff had been working with Renee Bullard, the District's benefits coordinator, to obtain long-term disability insurance benefits through American Fidelity Assurance Company ("American Fidelity"). *See* Bullard Dep. 1-:11-20; ECF No. 48-6 (documents submitted to American Fidelity describing Plaintiff's health conditions). This process of obtaining disability benefits from the District's insurance carrier is distinct from requesting disability leave or other accommodations from District itself. On August 13, 2020, Plaintiff came to school to turn in medical documentation that American Fidelity had requested related to her long-term disability insurance application. Ray Dep. 16:14-17:4. Plaintiff gave the relevant forms and documentation to Bullard, who then forwarded them to American Fidelity. *Id.* at 40:7-15. Along with the insurance forms, Plaintiff also gave Bullard a letter addressed to Brenda Matthews, an employee in the District's human resources department. Ray Dep. 40:3-18; ECF No. 58-1 at 4. The letter described the insurance documents Plaintiff was submitting, and also stated that she was seeking an accommodation from the school under the ADA "to teach remotely from home where I do not come in contact with the student body or other teachers." ECF No. 58-1 at 4.

When the school year started a couple of weeks later, Plaintiff did not return to work. On September 16, 2020, Plaintiff submitted a form requesting extended sick leave. ECF No. 48-8. Plaintiff's request was for an additional 10 days of leave related to treatment of her macular degeneration. *Id.* In filling out the form, Plaintiff attested that she had "exhausted all state and personal leave." *Id.* This leave request was denied for lack of supporting paperwork. *Id.*

On September 29, 2020, Plaintiff submitted a note from her doctor stating that she needed 10 days off work due to "severe anxiety with panic attacks." ECF No. 48-9. On September 30, 2020, Bullard called Plaintiff to discuss her request for leave. ECF No. 48-10. Bullard stated that, although Plaintiff's leave had been exhausted as of September 26, 2020, the District would grant

3

her request for an extra ten days of leave. *Id.* Bullard notified Plaintiff that her return-to-work date would therefore be October 14, 2020, and that Plaintiff would need to provide a note from her doctor saying that Plaintiff was cleared to return to work. *Id.* The contents of this call were memorialized in both a letter sent to Plaintiff the same day and an audio recording of the call. *Id.*; ECF No. 48-11 at 4-7. The letter reiterated that Plaintiff's leave had been exhausted and that her return-to-work date was October 14, 2020. ECF No. 48-10.

After her extended sick leave expired on October 14, 2020, Plaintiff still did not return to work, nor did she obtain or submit the required approval from her doctor indicating that she had been cleared to return to work. Ray Dep. 12:3-13:16; Galloway Decl. ¶¶ 3, 11. Plaintiff also did not submit an additional request for leave or any medical documentation to suggest she needed further leave. Galloway Decl. ¶¶ 3, 8; ECF No. 48-13.[2]

On March 24, 2021, Plaintiff was recommended for non-renewal due to excessive absenteeism. ECF No. 48-13. This recommendation was made in the context of a larger reduction of force that resulted in the non-renewal of several other District employees. Galloway Decl. ¶ 15. Plaintiff appealed the recommendation, and a non-renewal hearing took place before the school board on May 18, 2021. ECF No. 48-13. During the hearing, it became clear that Plaintiff did not return to work because she thought that by submitting her disability insurance documents to American Fidelity, she was on "long-term disability leave." ECF No. 48-11 (transcript of the non-renewal hearing). However, Plaintiff never applied for any such leave, nor did the District ever

---

[2] Throughout the 2020-2021 school year, Plaintiff visited the school administrative office to pay for her benefits in order to avoid a lapse. Defendants attest that, at different points throughout the year, Galloway and Bullard asked Plaintiff to submit additional documentation either clearing her for work or to obtain additional leave. Galloway Dep. 49:1-9, 52:9-17; Galloway Decl. ¶7-8. Plaintiff contends that these conversations did not happen. Ray Dep. 61:12-62:20. Regardless of whether Defendants raised the issue again with Plaintiff in person, the letter sent to Plaintiff on September 30, 2020 and the call from Bullard on the same day both informed Plaintiff that she was out of leave. In any case, this factual dispute over whether Plaintiff was given additional notice that her leave had expired is immaterial, as it has no bearing on whether Defendants engaged in discrimination or retaliation.

grant her leave beyond the ten days extended sick day leave in September. *Id.* In fact, it is unclear from the record whether the District even offers "long-term disability leave."

After it became clear that Plaintiff's absenteeism was due to her mistaken understanding about her leave status, the Board asked whether Plaintiff would consider returning the following school year to a different position. *Id.* at 16. Plaintiff responded, "[T]he only thing I know how to teach is communication." *Id.*

Following the hearing, the school board voted in favor of non-renewal. Ray Dep. 94:20-23. The day after the non-renewal hearing, Galloway called Plaintiff and again asked about her interest in other positions. Galloway Decl. ¶ 10; Ray Dep. 93:14-94:11. She responded that she was not interested. Galloway Decl. ¶ 10. Galloway then reiterated that she was welcome to apply to any open position with the District. *Id.* To date, Plaintiff has not done so. *Id.*

Now Plaintiff brings claims for retaliation and disability, race, sex, and age discrimination in violation of Title VI, Title VII, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). ECF No. 8. The parties have filed cross Motions for Summary Judgment. ECF Nos. 48, 58. Because the Motions address the same issues, they are analyzed in tandem.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718-19.

## III.   ANALYSIS

### a.   Evidentiary Disputes

The Court first turns to several minor evidentiary disputes that the parties have raised in conjunction with their Motions for Summary Judgment.

#### i.   Declaration of Steven Galloway

Defendants have submitted a declaration made by Steven Galloway. Plaintiff objects to the introduction of Galloway's declaration, contending that it violates Rule 56(c)(4). Rule 56(c)(4) states, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

6

Plaintiff argues that the declaration violates Rule 56(c)(4) because it is self-serving and contradicts his deposition testimony. However, "[m]erely claiming that the evidence is self-serving does not mean that [the court] cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002); *C.R. Pittman Const. Co., Inc. v. National Fire Ins. Co. of Hartford*, 453 F. App'x. 439, 443 (5th Cir. 2011). Further, having reviewed Galloway's declaration, the Court finds no clear contradiction between its contents and Galloway's representations during his deposition. Further, the Court finds that it complies with Rule 56(c)(4), as it relays facts which Galloway, as superintendent of the District, has personal knowledge. Thus, the Court may consider the declaration in deciding the pending Motions for Summary Judgment.

### ii.  Plaintiff's Errata Sheets

Plaintiff has submitted errata sheets to correct her deposition testimony. ECF No. 64. Defendants object that her errata sheets were untimely and should not be considered on summary judgment. Rule 30 is clear that a deponent has 30 days after the deposition transcript is completed in which to submit changes. FED. R. CIV. P. 30(e); *Reed v. Hernandez*, 114 F. App'x 609, 611 (5th Cir. 2004) (affirming exclusion of errata sheets submitted outside the 30-day timeframe). Ray's deposition was taken on December 13, 2023. Ray did not complete her errata sheets until February 8, 2024. The parties do not indicate when the deposition transcript was made available. Thus, the Court is unable to determine at this time whether the errata sheets should be excluded. However, this dispute is ultimately irrelevant as the contents of the errata sheets do not alter the summary judgement findings described below.

### b.  Disability Discrimination: Failure to Accommodate

Plaintiff first argues that Defendants failed to provide her with reasonable accommodations in violation of the ADA. The ADA requires employers to make reasonable accommodations to a known disability of an otherwise qualified employee, unless the accommodation would impose an undue hardship. 42 U.S.C. § 12112. To prevail on a failure-to-accommodate claim, an employee must show: (1) they are a qualified individual with a disability, (2) the disability and its consequential limitations were known by the employer, and (3) the employer failed to make reasonable accommodations for those limitations. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013); *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

Plaintiff argues that Defendants failed to accommodate her by (1) denying her request to teach remotely, (2) failing to transfer her to another position where she would interact with fewer students, and (3) failing to offer her a classroom in a more isolated part of the building. The Court takes each of Plaintiff's contentions in turn.

### i. Teaching Remotely

Plaintiff alleges that she was denied a reasonable accommodation because she was not permitted to teach remotely after asking Moody to do so and submitting a letter reiterating her request several days later. Defendants respond that being physically present in the classroom is an essential part of being a high school teacher, and thus if Plaintiff's disability prevented her from teaching in person, she was not a "qualified individual with a disability."[3]

"While the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 808 (5th Cir. 1997). Whether a task is an essential function

---

[3] While the parties dispute whether Plaintiff was a qualified person with a disability, they do not dispute that she had a disability covered by the statute. The Court will proceed under the assumption that her health issues meet the ADA's definition of a "disability."

of a job is a fact-specific inquiry. *Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847, 856 (W.D. Tex. 2014). However, "there is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." *Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 793 (5th Cir. 2017). "This is especially true when the position is interactive." *Id.*

Defendants argue that two of the essential responsibilities of being a high school teacher are monitoring the classroom and disciplining students when necessary. This is confirmed by Plaintiff's job description, which lists "Classroom Management" as one of the "Major Responsibilities and Duties." ECF No. 62-1 at 11-13. The description goes on to specify that teachers must "[m]anage student behavior in accordance with Student Code of Conduct and student handbook" and "[t]ake all necessary and reasonable precautions to protect students, equipment, materials, and facilities." *Id.* at 12.

Plaintiff argues that being in-person cannot be an essential feature of the job because the District required its teachers to instruct remotely from March through May of 2020 at the start of the COVID pandemic. However, the fact that Defendants temporary did not require employees to perform certain essential functions at the start of the COVID pandemic does not mean that employees were permanently excused from performing those functions. As EEOC guidance on the topic states,

> To the extent that an employer is permitting telework to employees because of COVID-19 and is choosing to excuse an employee from performing one or more essential functions, then a request—after the workplace reopens—to continue telework as a reasonable accommodation does not have to be granted if it requires continuing to excuse the employee from performing an essential function. . . . The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential

functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship.[4]

Students in the District began returning to school in fall of 2020, necessitating the in-person return of teachers and staff. While Defendants temporarily excused teachers from performing essential functions related to in-person instruction during the infancy of the COVID pandemic, it was not required to continue to do so. Other courts have similarly found that attending work in person is an essential function of being a teacher even though schools temporarily permitted remote instruction during the pandemic. *See Sarkisian v. Austin Preparatory Sch.*, 646 F. Supp. 3d 174, 184 (D. Mass. 2022), *aff'd*, 85 F.4th 670 (1st Cir. 2023) (finding that physical presence was an essential function of teaching); *Thomas v. Bridgeport Bd. of Educ.*, No. 3:20-CV-1487 (VLB), 2022 WL 3646175, at *4 (D. Conn. Aug. 24, 2022) ("[I]n-person instruction is an essential function of [the plaintiff's] job as a high school Spanish teacher."); *Jordan v. Sch. Bd. of the City of Norfolk*, No. 2:22-CV-167, 2023 WL 5807844, at *8 (E.D. Va. Sept. 7, 2023) (finding physical presence to be an essential function of the job of an elementary school principal); *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1192 (D. Kan. 2020), *aff'd*, 851 F. App'x 828 (10th Cir. 2021) (concluding that supervising students is an essential function of the job of middle school teacher).

Plaintiff's proposed accommodation of teaching remotely would not allow her to perform essential managerial and disciplinary functions that inherently require that she be physically present in the classroom. To provide this accommodation, Defendants would have had to reallocate these responsibilities to another employee who would be responsible for physically monitoring the classroom and disciplining students. Defendants were not required make such an accommodation.

---

[4] *See* U.S. Equal Emp. Opportunity Comm'n, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (2023), *https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#D*.

*See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."); *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998) ("If he can't perform the essential functions of his job absent assigning those duties to someone else, (e.g., having someone else perform his job) then [the employee] can not be reasonably accommodated as a matter of law.").

Further, to the extent that Plaintiff's disability prevented her from teaching in-person, she was not a "qualified individual with a disability," and Defendants were not obligated to provide accommodations. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (holding that a plaintiff must show they are a qualified individual with a disability as a predicate to bringing a failure-to-accommodate claim); *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [the employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."). Thus, Defendants did not fail to provide reasonable accommodations by denying Plaintiff's request to teach remotely.

### ii.  Teaching DAEP, ISS, or Homebound

Next, Plaintiff argues that Defendants should have offered to transfer her to another job with less student contact, which would have in turn limited her COVID exposure. Plaintiff identifies three potential programs that she could have been staffed on: (1) Disciplinary Alternative Education Program ("DAEP"), a program for students who have disciplinary infractions; (2) in-school suspension ("ISS"), a program to address students' less serious behavioral issues; and (3) Homebound, a home visit system to provide assignments and instruction to students who are not

able to attend school due to various illnesses. Although the exact number of students in DAEP and ISS fluctuated, it was generally thought to involve less student exposure than teaching a class. *See* Moody Dep. 37:10-17.

Reassignment to a different position can be a form of reasonable accommodation. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017). But "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for an could, with reasonable accommodation, perform." *Id.* (quoting *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)). If the identified position is already filled, the employer is not obligated to offer the employee that position as an accommodation. *Id.*

Plaintiff has offered no evidence suggesting that these positions were open or available. To the contrary, Moody attested that by the time Plaintiff brought up the issue of accommodations in August, the DAEP, ISS, and Homebound positions had already been filled. Moody Dep. 28:22-29:5. Thus, placement in DAEP, ISS, or Homebound would not have been a reasonable accommodation. *See Moss*, 851 F.3d at 418; *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997).

### iii.   Teaching in a More Isolated Part of the School

Next, Plaintiff contends that Defendants should have offered to relocate her class to a more isolated section of the school. Specifically, Plaintiff argues her class could have been relocated to G Building, which has less hallway traffic than the rest of the school, or a portable building with two classrooms called the Outback. Teaching in either building would have resulted in a lower risk of contact with students and teachers in hallways, but Plaintiff still would have had to interact with roughly 100 students a day in her speech and communications class. Galloway Dep. 75:2-12.

12

Although Plaintiff did not ask to be moved to a different classroom in one of these buildings, she argues the Defendants should have suggested that option as part of the "interactive process."

"[W]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). Once an accommodation is properly requested, the responsibility for fashioning a reasonable accommodation is shared between the employee and employer. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Id*. However, "the interactive process requires the input of the employee as well as the employer," and "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Id.* at 735-36.

In making her accommodations requests, Plaintiff represented that she could not teach in proximity to students. During her August 10th conversation with Moody, she asked only to teach remotely or to teach at school with no students in her classroom. Ray Dep. 23:14-21; Moody Dep. 25:18-27:23. Likewise, in her August 13th letter she stated that she needed "an accommodation which would allow me to teach remotely from home where I do not come in contact with the student body or other teachers." ECF No. 58-1 at 4. At no point did she suggest that an accommodation which slightly lessened her exposure to students outside of her class would be

sufficient.[5] To the extent that Plaintiff's disability permitted her to work in person but merely required her to work in a less trafficked part of the school, she failed to satisfy her initial burden of accurately indicating the limitations imposed by her disability. *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606 (5th Cir. 2009) (holding that the employer's obligation to engage in the interactive process only arises after employee meets initial burden of specifically identifying her disability-related limitations); *Hoskins v. GE Aviation*, 803 F. App'x 740, 745 (5th Cir. 2020) ("[The employee] caused the interactive process to break down, both by not clarifying what accommodation she needed and failing to substantiate her request."). Accordingly, Defendants' failure to suggest that Plaintiff's class be moved to the Outback or the G Building was not a failure to accommodate, nor was it indicative of a failure to engage in the interactive process.

In sum, the Court finds that Defendants are entitled to summary judgment on Plaintiff's disability discrimination claim.

### c. Age, Sex, and Race Discrimination

Plaintiff alleges discrimination on the basis of race, sex, and age in violation of Title VI (42 U.S.C. § 2000d), Title VII (42 U.S.C. § 2000e), and the ADEA (29 U.S.C. § 621 *et seq*.). A plaintiff may prove discrimination through either direct or circumstantial evidence. In the absence of direct evidence of discrimination, the *McDonnell Douglas* burden shifting framework applies. *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003). Because Plaintiff does not provide direct evidence of discrimination,[6] the Court will proceed under *McDonnell Douglas*.

---

[5] In fact, Moody attempted to persuade Plaintiff to return to work during their August 10th conversation by describing the various safety measures that would be available to mitigate her risk of infection, including masks, hand sanitizer, spray to wipe down desks, and gloves. Moody Dep. 27:9-14. Plaintiff found these efforts to be insufficient to make it safe for her to return to work, suggesting that accommodations which merely mitigated her risk would be insufficient.
[6] For something to constitute direct evidence, it must prove intentional discrimination without inference or presumption when believed by the factfinder. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002). Plaintiff's Motion for Summary Judgment summarily states, "Plaintiff has established that discrimination occurred by direct evidence pursuant to the statements of Galloway and Moody outlined supra." ECF No. 58 at 12. However, Plaintiff points to no specific statements from Galloway or Moody and cites no part of the record to support this

### i. Prima Facie Case

A plaintiff alleging discrimination bears to initial burden of establishing a prima facie case of discrimination. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). Doing so requires showing that (i) she belongs to a protected class; (ii) she was qualified for her position; (iii) she suffered an adverse employment action; and (iv) she was treated less favorably than other similarly situated individuals outside of her protected class. *Id*. For the fourth prong, the Fifth Circuit requires that the relevant comparator(s) receive preferential treatment "under nearly identical circumstances." *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (cleaned up).

Plaintiff asserts that Defendants discriminated against her when they (1) did not transfer her to a position administering ISS, DAEP, or Homebound and (2) ultimately opted not to renew her contract. Both alleged adverse employment actions are analyzed in turn.

### 1. Transfer to ISS, DAEP, or Homebound

First, Plaintiff claims that Defendants' failure to transfer her to ISS, DAEP, or Homebound was driven by race, sex, and age discrimination. However, of critical importance is the fact that Plaintiff never asked to be placed in ISS, DAEP, or Homebound. Ray Dep. 27:24-28:3. In fact, Plaintiff was under the impression that ISS and DAEP were not even running during the 2020-2021 school year. *Id* 26:17-27:13. Defendants cannot be liable for failing to transfer Plaintiff to a position that she did not request. *See Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (finding no adverse employment action where the plaintiff "never actually applied for an available position"); *Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (holding that a plaintiff alleging discrimination in her employer's failure to

---

assertion. Having reviewed the record in its entirety, the Court has found no statement from Galloway or Moody that would qualify as direct evidence of discrimination.

promote her must show either that she actually applied for the position or that her application would have been futile); *McClaine v. Boeing Co.*, 544 F. App'x 474, 477 (5th Cir. 2013) ("It is irrelevant for our purposes that [defendant] filled its FSW positions with white workers since [plaintiff] never applied to work as an FSW."). Thus, Plaintiff fails to show that she suffered an adverse employment action related to the ISS, DAEP, or Homebound positions.[7]

Moreover, Plaintiff has not shown that similarly situated employees without her protected characteristics were offered these positions over her. The employees placed in ISS, DAEP, and Homebound during the 2020-2021 school year shared some of Plaintiff's characteristics. The five employees who held those positions were Greg Rayley, Buddy Hardin, Michael DeLeon, Sandor Lister, and Jacob Harton, all of whom were athletics coaches in addition to their other responsibilities. Two of the coaches are non-white: DeLeon is Hispanic, while Lister, like Plaintiff, is Black. Ray Dep. 30:11-12, 34:10-16. Further, three of the coaches, DeLeon, Hardin, and Rayley were near Plaintiff's age or older. Plaintiff was 63 years old at the time of her non-renewal. While the precise ages of the coaches are not in the record, deposition testimony from Plaintiff and Galloway indicates that DeLeon was in his 60s, Hardin was in his 50s and Rayley was in his late 50s or early 60s. Ray Dep. 30:11-14, 32:2-4; 35:14-16; Galloway Dep. 77:19-23. Because DeLeon, Rayley, and possibly Hardin were around Plaintiff's age, they are not sufficient comparators to

---

[7] Plaintiff's Motion also alludes to the fact that she heard from an unnamed co-worker that a co-worker, Jacob Harton, had a special "online support" position created for him as an accommodation for his multiple sclerosis, while no such position was offered to her. *See* Ray Dep. 37:16-38:5. In contrast, Galloway, who has personal knowledge of the District's employment practices, has attested that no special positions were ever created for Harton. Galloway Decl. ¶ 13. To the extent that Plaintiff is attempting to base a discrimination claim on this alleged disparate treatment, she has failed to provide sufficient evidence to create a genuine dispute of fact over whether Harton was given an accommodation she was not. Plaintiff's hearsay deposition testimony on the subject is inadmissible and thus insufficient to create a genuine dispute as to this issue. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (finding that "[n]either the district court nor this court may properly consider hearsay evidence in affidavits and depositions" when deciding a motion for summary judgment); *Bellard v. Gautreaux*, 675 F.3d 454, 464 (5th Cir. 2012) (excluding inadmissible hearsay evidence on summary judgment). Further, even if the Court were to consider Plaintiff's hearsay testimony, Plaintiff has not alleged any facts about how Harton obtained this position, and thus has failed to show that Harton's circumstances were "nearly identical" to hers. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

suggest Plaintiff was treated less favorably than other similarly situated individuals. *See O'Connor v. Consolidated Coin*, 517 U.S. 308, 313 (1996) (holding that a prima facie case of age discrimination requires showing that a similarly situated was "substantially younger").

In sum, Plaintiff has failed to establish a prima facie case of discrimination on these grounds.

### 2. Non-renewal

Next, Plaintiff alleges the District's ultimate decision not to renew her contract was discriminatory. Plaintiff was non-renewed after she had exhausted her leave, failed to return to work, and did not submit any additional requests for leave. Plaintiff fails to make out a prima facie case of discrimination based on her non-renewal, as she is unable to identify any employee whose contract was renewed despite similar absenteeism.

Plaintiff first points to a group of four white female teachers of different ages who were concerned about the risk of contracting COVID from in-person instruction. Near the beginning of the school year, three of these teachers resigned because the District would not allow them to teach virtually, while one agreed to return to in-person teaching. Galloway Decl. ¶ 14, ECF No. 48-1. These teachers were similar to Plaintiff in that they were likewise concerned about the health risks associated with in-person instruction. However, they received identical treatment to Plaintiff, and thus do not support an inference of discrimination.

Plaintiff next alleges that one teacher, Lauren Jones, was permitted to teach remotely for several weeks after she contracted COVID. However, Jones did not do any teaching during the days when she was at home sick with COVID. Galloway Decl. ¶ 16. Further, Jones was only absent from school for the few days when she was sick, unlike Plaintiff who did not have COVID and

who was absent from school for the entirety of the school year. *Id.* Thus, Jones is not a similarly situated comparator, nor did she receive any preferential treatment.

In sum, Plaintiff has failed to make out a prima facie claim of discrimination related to her non-renewal because she has not identified any evidence showing that she was treated less favorably than those without her protected characteristics.

### ii. Pretext

Even if Plaintiff were able to establish a prima facie case of discrimination based on age, race, or sex, she has not proffered evidence to support a finding of pretext. After a plaintiff make out a prima facie case of discrimination, then the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003). The burden subsequently shifts back to the plaintiff to show that the proffered explanation is pretext for discrimination. *Id.* Meeting this burden requires the plaintiff to "produce substantial evidence" that the defendant's explanation is false or unworthy of credence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Defendants contend that Plaintiff was ultimately non-renewed because she had exhausted all her available leave, she had not returned to work, and she had not indicated when, if ever, she could return to work. Because Defendants have provided a legitimate nondiscriminatory reason for the adverse employment action, the burden shifts back to Plaintiff to show that this explanation is pretextual.

Plaintiff's pretext argue boils down to a claim that Plaintiff's non-renewal violated the District's temporary disability leave policy. The District's policy states that a request for temporary disability leave must include "a physician's statement confirming inability to work," "the date requested by the educator for the leave to being," and "state the probable date of return as certified by the physician." ECF No. 58-1 at 34. To return to work after temporary disability leave, the employee must submit "a physician's statement indicating the educator's physical fitness for the resumption of regular duties." *Id.* Further, it provides that the "contract or employment of the educator may not be terminated while the educator is on a leave of absence for temporary disability." *Id.*

Although Plaintiff summarily states that Defendants violated this policy, this assertion is unsupported by the record. Plaintiff had exhausted her leave as of September 26, 2020. On October 30, 2020, Plaintiff obtained an additional ten days of extended sick leave related to her anxiety and panic attacks. Her ten days of extended sick leave expired on October 14, 2020, at which time Plaintiff would have been allowed to return to work pursuant to the District's leave policy.[8] But, Plaintiff did not attempt to return to work, and she did not submit a request to prolong her leave period. Thus, Plaintiff has not shown a violation of this policy, nor has she provided any other colorable evidence of pretext. The Court finds that Defendants should be granted summary judgment on Plaintiff's discrimination claims.

### d. Retaliation

Finally, Plaintiff alleges that her non-renewal was retaliation for protected activity. Like discrimination claims, retaliation claims that are unsupported by direct evidence must be decided under the *McDonnell Douglas* burden shifting framework. *Davis v. Dallas Area Rapid Transit*,

---

[8] It is also unclear whether the District's temporary disability leave policy even applies to Plaintiff, as Plaintiff appears to have been out on extended sick leave, not temporary disability leave.

383 F.3d 309, 319 (5th Cir. 2004). To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Id*. If the employee makes a prima facie case of retaliation, the employer must offer a legitimate, non-retaliatory reason for the adverse employment action. *Standley v. Rogers*, 680 F. App'x 326, 327 (5th Cir. 2017). The burden subsequently shifts back to the employee to show that the employer's proffered justification is pretextual. *Id.*

Plaintiff argues that she engaged in the following protected activities: (1) her August 10, 2020 request for accommodations, (2) her appeal of the initial recommendation of non-renewal, and (3) her subsequent filing of EEOC charges. Plaintiff cannot establish a prima facie case of retaliation related to any of these protected activities.

First, Plaintiff has not shown a causal link between her August 10th request for accommodations and her non-renewal. "Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation." *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). But, when temporal proximity is the only evidence of causation, the proximity must be "very close." *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 455 (5th Cir. 2013). In general, a time lapse of five months or more is insufficient without other causal evidence. *Id.* Plaintiff's accommodation request in August 2020 is too attenuated from her eventual non-renewal in May 2021. Even if the Court were to instead consider the date when she was proposed for non-renewal, which was in March 2021, the events are still too distant to give rise to an inference of causation. Therefore, Plaintiff fails to establish a prima facie case of retaliation on these grounds.

Next, Plaintiff argues that her appeal of the notice of non-renewal was also protected activity that motivated the school board to eventually vote in favor of non-renewal. The Court will assume that this temporal proximity between the two events (two months) is sufficient to create a causal inference and that Plaintiff has otherwise made out a prima facie case of retaliation. Even so, Defendants have given a legitimate non-retaliatory reason for her non-renewal (i.e., that she had exhausted all her available leave and had not returned to work). Plaintiff has proffered no evidence that this explanation is pretext to disguise an intent to retaliate against Plaintiff for appealing the initial proposal of non-renewal. *See Castlino v. Thomas*, 141 F. App'x 255, 257 (5th Cir. 2005) (finding employer was entitled to summary judgment on retaliation claim where employee provided no evidence of pretext).

Finally, Plaintiff's argument that she was retaliated against because of her subsequent EEOC charge is uncompelling. Her EEOC charge was made *after* her contract was not renewed. It cannot be the case that protected activity taken after an adverse employment action caused the adverse employment action. *See Castlino*, 141 F. App'x at 257 (finding employee could not sustain a retaliation claim based on EEOC charge made after the termination).

Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## IV.    CONCLUSION

The events leading to Plaintiff's non-renewal are regrettable. However, Plaintiff has not shown a genuine dispute as to any material facts. Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Summary Judgment is **DENIED**.

All other pending motions, including Defendants' Motion to Quash, ECF No. 33; Plaintiff's Motion to Compel, ECF No. 38; Defendants' Motion to Strike, ECF No. 59; and Plaintiff's Motion for Leave, ECF No. 66, are **DENIED AS MOOT**.

Signed at Houston, Texas on March 22, 2024.

Keith P. Ellison
United States District Judge